O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SENTINEL OFFENDER SERVICES, LLC,

Plaintiff,

vs.

G4S SECURE SOLUTIONS (USA), INC.

Defendant.

CASE NO. SACV 14-298-JLS (JPRx)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (Doc. 11)**

## I. INTRODUCTION

Before the Court is Defendant G4S Secure Solutions (USA) Inc.'s Motion to Dismiss. (Mot., Doc. 11.) Plaintiff Sentinel Offender Services, LLC, opposed, and Defendant replied. (Opp'n, Doc. 15; Reply, Doc. 16.) Having considered the parties' briefing, and having taken the matter under submission, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

## II. BACKGROUND

Sentinel provides privatized offender supervision services and probation services. (Compl. ¶ 7, Doc. 1, Ex. 1.) G4S offers "secure solutions and business processes." (*Id.* ¶ 9.) In the fall of 2011, Sentinel became interested in acquiring G4S Justice Services LLC ("Justice"), which was owned by Defendant G4S, which in turn is owned by G4S plc ("G4S UK"). (*Id.*)

### A. Sentinel's Acquisition of Justice

On November 21, 2011, Sentinel entered into a written letter of intent with G4S UK, wherein Sentinel proposed to acquire Justice, as well as certain assets of a related company, subject to the completion of due diligence and a mutually agreed Purchase Agreement. (*Id.* ¶ 10.)

Between November and December 2011, G4S, G4S UK and Justice uploaded certain documents to a "secure online data room" for Sentinel to review. (*Id.* ¶ 11.) These documents included financial statements and highly redacted copies of Justice's contracts with the fifteen customers who purchased the most goods or services from Justice during 2011. (*Id.*) Both during and after Sentinel's review of these documents, Bob Contestabile, Hans Kintsch, and Mark Contestabile, among others at Sentinel, had numerous in person and telephonic meetings and conversations with representatives of G4S and Justice, including Susanne Jorgensen, Chief Financial Officer of G4S Americas, Ian Green, a Vice

President at G4S, and Blake Beach, the CEO of Justice, regarding the possible acquisition of Justice. (*Id.* ¶ 12.)

Based on information and documents provided to Sentinel, a purchase price of $13 million was negotiated. (*Id.* ¶ 13.) On February 22, 2012, counsel for G4S, G4S UK, and Justice sent a draft purchase agreement to Sentinel, which was later revised at least fifteen times. (*Id.* ¶¶ 14-15.) Among the revisions to the initial agreement was the addition of section 1.3, which allows for an adjustment of the purchase price in the event that certain specified contracts with customers of Justice, which were up for re-bid at the time of closing, did not result in the award of a new or extended contract. (*Id.* ¶ 16.) On March 7, 2012, representatives of Sentinel expressed concern to representatives of G4S and Justice regarding Justice's contract with the North Carolina Department of Correction, Division of Community Corrections ("NCDOC"), which was up for rebidding, and suggested it be included in section 1.3 of the agreement. (*Id.* ¶ 17.) In response, representatives of Justice, including CEO Blake Beach, assured Bob Contestabile, Hans Kintsch, and Mark Contestabile of Sentinel that the NCDOC contract "won't be a problem" and that "we've got that one." (*Id.*) As a result, the final version of the agreement did not include the NCDOC in section 1.3. (*Id.* ¶ 18.)

On April 27, 2012, Sentinel's acquisition of Justice closed. (*Id.* ¶ 20; Agreement, Compl. Ex. A.) Sentinel acquired Justice, as well as certain specified assets from a related entity, for a purchase price of $13 million, subject to the purchase price adjustments provided in section 1.3. (Compl. ¶ 21.) Article 4 of the agreement contained numerous representations and warranties, which are addressed in the discussion of Sentinel's claims below. Article 7 of the agreement provided that Sentinel may seek indemnification from G4S under certain circumstances and pursuant to certain procedures, which Sentinel alleges to have followed. (*Id.* ¶¶ 46-48.)

**B. Loss of the NCDOC Contract**

On June 5, 2012, after the closing date of Sentinel's purchase of Justice, Sentinel discovered during a meeting with the North Carolina Department of Public Safety, Purchasing and Logistics ("NCDPS") that the NCDOC contract would not be renewed. (*Id.* ¶ 35.) On June 6, 2012, Sentinel received a letter from NCDPS stating that the contract would not be renewed because the request for proposal previously submitted by Justice did not meet the following three requirements: (1) provision of offender monitoring PC software compatible with Internet Explorer version 7; (2) provision of GPS tracking software capable of supporting more than 1,000 devices and establishing more than 100 exclusion zones; (3) provision of electronic monitoring equipment with a "minimum internal operating battery life of at least 48 hours with maximum recharge time of 4 hours per day." (*Id.* ¶¶ 36, 37; *Id.* Ex. B.)

On June 8, 2012, the NCDOC formally awarded the contract to BI, Inc. (*Id.* ¶ 39.)

**C. Alleged Concealment of Facts**

Following the June 6, 2012 letter and the June 8, 2012 bid award, Sentinel conducted an investigation of Justice's records and files, including emails and correspondence that it alleges had not been known or accessible to it prior to closing. (*Id.* ¶ 40.) Based on Sentinel's investigation, it discovered the facts set forth below.

On August 5, 2011, the NCDOC notified Justice that its existing contract would expire on March 31, 2012, and that Justice would have to submit a new bid. (*Id.* ¶ 42(a).) On August 16, 2011, the NCDOC issued a Request for Proposal, amended by an October 4, 2011 addendum, which included the three requirements identified above regarding (1) use of Internet Explorer version 7; (2) GPS tracking software capabilities; and (3) battery life and battery recharge time. (*See id.* ¶¶ 37, 42(b),(c).) The October 4, 2011 addendum stated that "[a]ll proposals will be evaluated and classified as responsive or non-responsive. If non-responsive, [the] proposal will not be considered further. To be

eligible, [the proposal] must meet the intent of all requirements . . . [A] serious deficiency in the response to any one factor may be grounds for rejection regardless of overall score." (*Id*. ¶ 42(c) (emphasis in Complaint; third alteration in Complaint).

In the fall of 2011, prior to Justice's bid submission, Justice exchanged emails with its vendor, 3M Electronic Monitoring, regarding the NCDOC's bid requirements. (*Id*. ¶ 42(d).) On September 12, 2011, Melissa O'Keefe, a Vice President at 3M, emailed Mike Dean and Leo Carson, both Vice Presidents at Justice, highlighting five functional areas where 3M's software and field monitoring equipment did not meet the requirements of the Request for Proposal. (*Id*.) On November 10, 2011, Justice submitted its NCDOC bid proposal, which included admissions that its proposed monitoring software was not compatible with Internet Explorer version 7, as required by the Request for Proposal. (*Id*. ¶ 42(e).)

By letter dated January 18, 2012 from a purchasing agent at the NCDOC to Leo Carson, the NCDOC requested clarification as to several aspects of Justice's proposal. (*Id*. ¶ 42(f).) The letter, which is not attached to the Complaint, stated in part:

> 3. On pages 18 and 21 [Justice's] response states that the offender management software can be used with Internet Explorer Version 8 or Firefox version 3.6 browsers.
>
> 4. Is the proposed offender management software compatible with NCDOC's current environment which uses Internet Explorer Version 7 ? Yes or No? [. . .]
>
> 14. Page 18 and 21: The Web Based system works with Internet Explorer 8 or Firefox 3.6. The NCDOC uses Explorer 7 will the system work with this version Yes or No? [. . .]
>
> 16. Page 89; i, Establish exclusion zones around all Primary and Second schools in North Carolina. Will your system

> allow exclusion zones around ALL? Yes or No? Response indicates that the ability to create zones has limitation and the total number is 100 [. . .]
>
> 17. Page 100: Per Addendum the battery life must be at least 48 hours. Response indicates up to 48 and there is conflicting info in previous sections that the battery life is 24 hours depending on the mode. Is the battery life at least 48 hours charge time? Yes or No?[]

(*Id*.)

On January 27, 2012, Carson emailed a copy of the letter to 3M and requested assistance in responding to the NCDOC. (*Id*. ¶ 42(g).) O'Keefe replied that the 3M software and equipment proposed in the Justice bid (1) did not meet the Internet Explorer version 7 compatibility specification; (2) did not meet the GPS exclusion zone specification; and (3) did not meet the specification for minimum battery life. (*Id*.) Carson forwarded the response to a number of Justice employees, including Mike Dean, expressing concern and asking for "thoughts and insights on how to respond[.]" (*Id*.)

On January 30, 2012, Carson emailed O'Keefe, advising her that Justice "is genuinely concerned that these 3M items render our proposal non-compliant with the NCDOC RFP requirements" and requested that she investigate the issues. (*Id*. ¶ 42(h).) O'Keefe responded by confirming the 3M software and equipment did not meet the requirements of the Request for Proposal. (*Id*.)

On June 31, 2012, Carson emailed Darryl Martin and Mike Dean of Justice, stating that "we face exposure for potential non-compliance" with the three above-identified requirements of the Request for Proposal. (*Id*. ¶ 42(i).) Later that day, Carson emailed and faxed a response to the NCDOC confirming that Justice's proposal did not comply with these three requirements. (*Id*. ¶ 42(j).)

**D. Present Action**

On January 3, 2014, following an unsuccessful attempt to obtain indemnification from G4S under the terms of the agreement, Sentinel filed the present action. (Compl.)[1] Sentinel brings claims for (1) breach of representations and warranties in purchase agreement; (2) breach of written contract; (3) fraud and deceit; (4) negligent misrepresentation; and (5) constructive fraud. (*Id.* at 17-34.)

**III. LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "However, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity[,] including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756,

---

[1] The action was originally filed in Orange County Superior Court. G4S was served on January 30, 2014 and timely removed the action on February 28, 2014. (Notice of Removal at 2, Doc. 1.) This Court has diversity jurisdiction, as the parties are citizens of different states, and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1-2; *id.* at 34-35.)

764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

## IV. DISCUSSION

G4S moves to dismiss all of Sentinel's claims, as well as Sentinel's request for punitive damages. The Court addresses each claim in turn, followed by the request for punitive damages.

### A. Claim for Breach of Representations and Warranties in Purchase Agreement

Sentinel's first claim is for breach of certain representations and warranties in Article 4 of the agreement. The Court finds that Sentinel plausibly alleges a breach of the representations and warranties in section 4.25(a)(ii) of the agreement. Sentinel also plausibly alleges a breach of the two "catch-all" representations and warranties in the agreement—section 4.23 and the first unnumbered paragraph of Article 4—based on the representations and warranties in sections 4.25(a)(i) and 4.25(a)(ii) of the agreement.

In section 4.25(a)(i) of the agreement, G4S represented that "all Material Customers continue to be customers of Justice and no Material Customer has materially reduced or disclosed[2] an intention to materially reduce its business with Justice below the levels achieved during [2011]." (Compl. ¶ 52(d); Agreement § 4.25(a)(i).) In section 4.25(a)(ii) of the agreement, G4S represented that "no Material Customer has terminated its

[2] Sentinel's Complaint and Opposition systematically misquote and misrepresent this section as merely requiring the NCDOC "indicate," rather than "disclose," an intention to materially reduce its business with Justice. Sentinel is advised that similar misrepresentations in the future may result in sanctions.

relationship with Justice or has threatened to do so." (Compl. ¶ 52(e); Agreement § 4.25(a)(ii).) The agreement lists the NCDOC as a "Material Customer." (Agreement § 4.25(a); Agreement Disclosure Schedule 4.25.) G4S argues that the NCDOC's January 18, 2012 letter does not demonstrate that the NCDOC "disclosed an intention to materially reduce its business with Justice" or that the NCDOC "threatened" to terminate its relationship with Justice, because the letter "requested clarification." (Mem. at 8-9; Compl. ¶ 42(f).) Construing all inferences in a light most favorable to Sentinel, the Court finds the letter could be plausibly considered a "threat" to terminate the relationship, particularly given the NCDOC's October 4, 2011 statement regarding the possible consequences of failing to comply with the requirements of the Request for Proposal. Thus, Sentinel plausibly alleges a breach of the representations and warranties in section 4.25(a)(ii).

Sentinel also plausibly alleges a breach of the representations and warranties in section 4.23 and the first unnumbered paragraph of Article 4, based on the representations and warranties in sections 4.25(a)(i) and 4.25(a)(ii). Pursuant to section 4.23 of the agreement, G4S represented that "[t]he representations and warranties contained in this Article 4 do not contain any untrue statement of material fact or omit to state any material fact necessary to make the statements and information contained in this Article 4 not misleading." (Compl. ¶ 52(h); Agreement § 4.23.) Pursuant to the first unnumbered paragraph of Article 4, G4S "represent[ed] and warrant[ed] to [Sentinel] that the statements contained in this Article 4 are correct and complete as of the Closing Date." (Compl. ¶ 52(g); Agreement at 8.) Because section 4.23 uses the term "misleading," a misrepresentation may exist as to section 4.23 based on the omission of a material fact that renders a specific representation elsewhere in the agreement misleading, even if that other representation is not false *per se*. Inasmuch as an omitted material fact would make a specific representation "misleading" under section 4.23, it would also render the statements made in connection with that representation not "complete" pursuant to the first

unnumbered paragraph of Article 4. Construing all inferences in a light most favorable to Sentinel, the Court finds that Sentinel plausibly alleges it was "misleading" to represent that the NCDOC had not "threatened" to terminate its relationship with Justice and had not "disclosed an intention to materially reduce its business with Justice," without also disclosing (1) the NCDOC's October 4, 2011 statement regarding bid requirements; (2) the NCDOC's January 18, 2012 letter; and (3) Justice's January 31, 2012 response. (Compl. ¶¶ 54(a)-(e).) For the same reasons, the statements made to Sentinel could plausibly be considered not "complete" pursuant to the first unnumbered paragraph of Article 4. Sentinel also plausibly alleges that these undisclosed facts are "material;" whether they actually are material presents a factual question that is inappropriate to resolve at this stage. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 n.7 (9th Cir. 2013) ("[T]he materiality of a misrepresentation is typically an issue of fact, and therefore should not be decided at the motion to dismiss stage."); *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1163 (Ct. App. 2005) ("Materiality is a question of fact for the jury, unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.") (quotation marks omitted).

**B. Claim for Breach of Written Contract**

Sentinel's claim for breach of written contract is based on (1) breach of the representations and warranties identified above; (2) breach of the implied covenant of good faith and fair dealing; and (3) breach of the terms and conditions set forth in Article 7 of the agreement, which allow Sentinel to seek indemnification from G4S under certain circumstances. (Compl. ¶ 63.) Inasmuch as Sentinel states a claim for breach of representations and warranties in the agreement, Sentinel also states a claim for breach of

written contract. For the same reasons, Sentinel states a claim for breach of contract based on G4S's failure to indemnify under Article 7.[3]

As to the breach of implied covenant claim, "[t]he covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000) (citation omitted). "It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id*. at 349-50. At the same time, "[t]o the extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is superfluous." *Id*. at 352. Further, a claim for breach of the implied covenant of good faith and fair dealing cannot be based on non-disclosure or concealment prior to the closing date of the contract. *See McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (Ct. App. 2008).

To the extent Sentinel's breach of implied covenant claim is premised on the NCDOC contract not being renewed, it fails, because the parties' extensively-negotiated contract did not include the NCDOC in section 1.3, which allows for an adjustment of the purchase price in the event that certain identified contracts with customers of Justice did not result in the award of a new or extended contract. *See Guz*, 24 Cal. 4th at 349. To the extent this claim is based on a failure to disclose information as part of the negotiation process prior to closing, it also fails. *See McClain*, 159 Cal. App. 4th at 799. To the extent this claim is based on a breach of specific sections of the agreement, it is superfluous with the claim for breach of express and implied warranties as well as the claim for breach of written contract. *See Guz*, 24 Cal. 4th at 352. Accordingly, Sentinel fails to state a claim for breach of the implied covenant of good faith and fair dealing.

---

[3] G4S does not argue for dismissal of this portion of the claim.

**C. Claims for Fraud and Negligent Misrepresentation**

Sentinel's claims for fraud and negligent misrepresentation are based on the same representations and warranties that form a basis for its claim for breach of representations and warranties. (*Compare* Compl. ¶¶ 52, 54 *with id*. ¶¶ 69-70, 77, 79.)

A fraud claim requires "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp*, 34 Cal. 4th 979, 990 (Cal. 2004) (citations omitted). A claim for negligent misrepresentation requires "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc*., 196 Cal. App. 4th 1559, 1573 (Cal. 2011) (citations and quotation marks omitted).

For the reasons stated above, Sentinel plausibly alleges the representations and warranties in section 4.25(a)(ii) were false. Sentinel also plausibly alleges the representations and warranties in section 4.23 and the first unnumbered paragraph of Article 4 were false, based on the factual omissions necessary to make the representations and warranties in sections 4.25(a)(i) and 4.25(a)(ii) complete and not misleading. In addition, Sentinel alleges knowledge of falsity (or, in the alternative, no reasonable ground for believing the representation to be true), intent to induce reliance, justifiable reliance, and damages. (*See* Compl. ¶¶ 70-75, 79-82.)[4] The Court further finds that Sentinel's fraud

---

[4] As Sentinel has adequately pleaded reliance, the Court need not address at this stage whether section 7.3(f) of the Agreement, which provides that "[n]o Indemnified Person's rights under this Agreement will be adversely affected by . . . any knowledge acquired or capable of being acquired, by such Indemnified Person at any time," means that Sentinel need not establish reasonable reliance as an element of its fraud or negligent misrepresentation claims. (*See* Opp'n at 23; Reply at 11-12.)

claim meets the heightened pleading standard of Rule 9(b), as it alleges in detail what information G4S did and did not disclose, when disclosures were made, and to whom they were made. Without deciding whether Rule 9(b) applies to Sentinel's negligent misrepresentation claim, the Court finds that the claim would also meet the heightened pleading standard for the same reasons.

Sentinel also plausibly alleges fraudulent omissions of the facts identified above. "A failure to disclose a fact can constitute actionable fraud or deceit in four circumstances: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Collins v. eMachines, Inc*., 202 Cal. App. 4th 249, 255 (Ct. App. 2011). When there is no fiduciary relationship, "the duty to disclose generally presupposes a relationship grounded in "some sort of *transaction* between the parties. Thus, a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." *OCM Principal Opportunities Fund v. CIBC World Markets Corp*., 157 Cal. App. 4th 835, 851 (Ct. App. 2007) (citations omitted).

As to (1), no fiduciary duty is alleged. Sentinel argues that G4S had a contractual duty to disclose the omitted facts discussed above pursuant to section 4.23 of the agreement. (Opp'n at 19-20. *See* Agreement § 4.23 ("The representations and warranties contained in this Article 4 do not . . . omit to state any material fact necessary to make the statements and information contained in this Article 4 not misleading.").) G4S does not address this argument, and the Court finds that section 4.23 gives rise to a duty to disclose the omitted facts discussed above.

As to (2)—exclusive knowledge by defendant of material facts not known or reasonably accessible to plaintiff—Sentinel alleges it "did not have access to the records

and documents containing such information." (Compl. ¶¶ 70(i), 79(i).) While Sentinel does allege G4S provided it with access to some documents, including "highly redacted copies of Justice's contract[]" with the NCDOC, (*id.* ¶ 11), nothing further is alleged as to what information was or was not accessible. Drawing all reasonable inferences in Sentinel's favor, the Court finds Sentinel plausibly alleges that the omitted facts discussed above were not "reasonably accessible" to Sentinel. Whether or not such information was actually "reasonably accessible" presents a factual question that is inappropriate to resolve at this stage. *See Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 295(Ct. App. 2004).

As to (3)—active concealment—"active concealment may exist where a party [w]hile under no duty to speak, nevertheless does so, but does not speak honestly or makes misleading statements or suppresses facts which materially qualify those stated." *Id*. at 294 (quotation marks omitted; alteration in original). "Mere nondisclosure does not constitute active concealment. Rather, to state a claim for active concealment, Plaintiff must allege specific affirmative acts on the part of the [D]efendants in hiding, concealing or covering up the matters complained of." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) (citations and quotation marks omitted, alteration in original). Sentinel alleges that on March 7, 2012, it "expressed concern" with the NCDOC contract and suggested the NCDOC be included in the price adjustment provision in section 1.3. (Compl. ¶ 17.) In response, Justice's CEO, Blake Beach, stated that the NCDOC contract "won't be a problem" and "we've got that one." (Compl. ¶ 17.) As a result, the NCDOC was not included in section 1.3. (*Id*. ¶ 18.) G4S argues that the statements made by Beach are opinions, which ordinarily do not give rise to a claim for fraud in and of themselves. *See Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1423 (Ct. App. 1988). However, G4S cites no authority that these statements, even if opinions,[5]

[5] As the Court does not have the complete context for the statements, the Court does not decide in this Order whether or not they are opinions.

could not support a finding of active concealment of other information that is indisputably factual. Based on the above allegations, the Court finds that Sentinel has adequately alleged active concealment.

As to (4)—partial representations that are misleading because some other material fact has not been disclosed—Sentinel argues that once G4S made "extensive warranties and representations and accompanying disclosure schedules concerning the relationship of Justice with [the NCDOC]," it had a duty to disclose all material facts related to the NCDOC. (Opp'n at 20-21.) For the reasons stated above, Sentinel plausibly alleges it was misleading for G4S to make the representations and warranties in 4.25(a)(i) and 4.25(a)(ii) while omitting the facts identified above.

**D. Claim for Constructive Fraud**

Sentinel does not oppose dismissal of this claim. (Opp'n at 24.) Accordingly, the claim is DISMISSED WITH PREJUDICE.

**E. Request for Punitive Damages**

G4S argues that the agreement prohibits recovery of punitive damages, and therefore Sentinel's request for punitive damages should be dismissed. (Mem. at 18.) G4S further argues that the request for punitive damages is insufficiently pleaded. (*Id.*) Sentinel's allegations as to punitive damages are as follows: "[i]n performing the acts herein alleged, G4S acted fraudulently, despicably and in willful and conscious disregard of Sentinel's rights and/or intentionally made the misrepresentations and omissions of material fact described herein, for the purpose of depriving Sentinel of money and property, thereby justifying an award of punitive damages against G4S." (Compl. ¶ 75.) Sentinel essentially admits its allegations in support of punitive damages are conclusory, but it argues that conclusory allegations are sufficient, citing pre-*Twombly* decisions. (Opp'n at 24-25.) Post-*Twombly*, however, a plaintiff must make more than conclusory

allegations as to punitive damages. *See Diehl v. Starbucks Corp.*, No. 12CV2432 AJB (BGS), 2014 WL 295468, at *8, *14 (S.D. Cal. Jan. 27, 2014) (finding fraud claims sufficiently pleaded, but conclusory allegations as to punitive damages were insufficient).

Thus, Sentinel's allegations in support of punitive damages are insufficiently pleaded, and the punitive damages claim is DISMISSED WITHOUT PREJUDICE. Unless and until Sentinel can provide sufficient factual allegations supporting its request for punitive damages, the Court will not decide whether punitive damages are barred under the Agreement.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED IN PART and DENIED IN PART. Sentinel's claim for breach of the implied covenant of good faith and fair dealing is DISMISSED WITHOUT PREJUDICE. The Motion is DENIED as to the claims for breach of representations and warranties, breach of written contract, fraud, and negligent misrepresentation. The constructive fraud claim is DISMISSED WITH PREJUDICE. The request for punitive damages is DISMISSED WITHOUT PREJUDICE. Any amended pleading must be filed within **21 days** of the date of this Order.

**SO ORDERED.**

DATED: June 3, 2014

JOSEPHINE L. STATON
HONORABLE JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE